THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD 
 NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED 
 BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
South Carolina Department of Social Services/Helen
Fleisig, Plaintiffs,
of whom Helen Fleisig is Respondent,
v.
Richard Fleisig, Appellant.
 
 
 

Appeal From Beaufort County
Robert S. Armstrong, Family Court Judge

Unpublished Opinion No. 2004-UP-535
Submitted February 11, 2004  Filed October 21, 2004

REVERSED

 
 
 
James H. Moss, of Beaufort, for Appellant.
Ralph E. Tupper, of Beaufort, for Respondent.
 
 
 

PER CURIAM:  Richard Fleisig (Husband) 
 appeals a ruling of the family court ordering him to pay $57,600 in unpaid alimony 
 to Helen Fleisig (Wife).  We reverse. 
 [1] 
BACKGROUND
Husband and Wife married in New Jersey in 1963 and were granted a divorce in 
 South Carolina in 1990.  The family court granted Wife child support and $400 
 per month rehabilitative alimony for a period of sixty months.  Wife appealed, 
 and this court modified the alimony to permanent periodic payments of $600 per 
 month.  Fleisig v. Fleisig, 93-UP-0061 (S.C. Ct. App. Mar. 8, 1993).  

According to Wifes testimony, Husband moved around a lot after the divorce, 
 never paid the ordered alimony, and later quit paying the child support.  Husband 
 claims no notice or knowledge of this courts opinion modifying his alimony 
 obligation, but asserts he timely paid all of the rehabilitative alimony ordered 
 by the family court.  
Shortly after this courts opinion, Wife moved to her family home in Mississippi. 
  She was diagnosed with cancer in 1997 and spent a large portion of the 
 next three years hospitalized and in a physically and financially disadvantaged 
 condition.  Nevertheless, Wife claimed that before, during, and after this ordeal, 
 efforts were made to secure payment of the alimony and child support.  She contacted 
 several attorneys, one of whom agreed to take her case only to later refuse 
 it. [2]   She contacted legal aid and 
 the police several times in both South Carolina and Mississippi.  When 
 Wife learned Husband was residing in Atlanta, she contacted the courthouse there 
 only to learn he had moved to New Jersey.  By this point, her illness 
 and financial situation began to hinder her efforts.  At no time was 
 Husband contacted or any claim filed in relation to the non-payment of alimony.  

In 1999, the South Carolina Department of Social Services (SCDSS), acting on 
 behalf of Wife, sought a rule to show cause resulting in the issuance of a bench 
 warrant for Husbands arrest for a support arrearage of $19,364.  However, 
 pursuant to a 1995 order, SCDSS asserted and the court held the child was emancipated 
 and Husband was $7,107 in arrears on child support at the time of emancipation.  
 In October 2001, Husband paid this amount in full to the New Jersey family court. 
  The money eventually went to SCDSS and some payments were made to Wife.  
 Neither the New Jersey court nor Wife ever communicated to the issuing South 
 Carolina court that the amount had been satisfied.  In June 2002, Wife 
 learned Husband was in Beaufort visiting their son.  She contacted the police 
 and Husband was arrested on the bench warrant issued for the child support arrearage.  
 He was incarcerated for nine days before being granted a hearing on the matter.  

At the hearing, Husband submitted evidence he had paid his child support arrearage, 
 obviously believing child support was the subject of the action.  The court 
 quickly acknowledged the child support had been paid and was no longer at issue. 
  Wife, however, wanted to proceed on a claim for unpaid alimony, expressing 
 her fear that Husband would never again appear in South Carolina.  She claimed 
 the contempt order (entered to support the original bench warrant) contained 
 language broad enough to cover the alimony as well as child support. [3]   Husband contended the case should 
 be dismissed and he should be served a separate summons and complaint on the 
 issue of alimony.  Attempting to balance the due process concerns of 
 Husband and the significant travel burdens on Wife, the court allowed Wife to 
 testify on the non-payment of the alimony at this hearing.  The court then gave 
 Husband official personal notice of the suit and granted him ten days to respond 
 in person or by affidavit.  Husband submitted an affidavit. 
In its final order, the court found Husbands claim that he did not receive 
 notice of this courts unpublished opinion lacking in credibility and awarded 
 Wife $57,600 in unpaid alimony (the total accrued less the $24,000 Husband claimed 
 to have paid).  Husband appeals on the ground that this procedure violated 
 certain constitutional rights. 
DISCUSSION 
Husband claims the procedure followed by the family court 
 constitutes a violation of his constitutional right to procedural due process.  
 We agree.
The Due Process Clause requires notice reasonably calculated 
 under all the circumstances, to apprise interested parties of the pendency of 
 the action and afford them an opportunity to present their objections.  Mullane v. 
 Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); Murdock 
 v. Murdock, 338 S.C. 322, 334, 526 S.E.2d 241, 248 (Ct. App. 1999).  Although 
 procedural due process is a flexible doctrine, it mandates that a litigant be 
 placed on notice of the issues the court is to consider.  Murdock, 338 
 S.C. at 333, 526 S.E.2d at 248.  The fundamental purpose of pleadings is to 
 fulfill this requirement.  See South Carolina Natl Bank v. Joyner, 
 289 S.C. 382, 387, 346 S.E.2d 329, 332 (Ct. App. 1986) (It is elementary that 
 the principal purpose of pleadings is to inform the pleaders adversary of legal 
 and factual positions which he will be required to meet on trial.). 
Here, Husband was arrested on a bench warrant issued pursuant 
 to a civil contempt order.  The order was issued following a rule to show cause 
 brought on Wifes behalf by SCDSS.  Both the order and the bench warrant list 
 SCDSS as a plaintiff.  SCDSS, though granted authority to pursue unpaid child 
 support by way of a limited power of attorney, has no authority to pursue unpaid 
 alimony.  These pleadings were wholly insufficient to give Husband notice he 
 would be required to address the issue of unpaid alimony at the hearing.  The 
 court even acknowledged Husband had reason to believe what he was here today 
 to defend on was on child support.  
Wife argued the language failure to pay as ordered contained 
 in the civil contempt order broadly covered any support amount Husband might 
 have owed.  We disagree.  The family court is limited by the scope of due process, 
 and the rule that its pleadings are to be liberally construed may not be stretched 
 so as to permit the court to award relief not contemplated by the pleadings.  
 Henry v. Henry, 296 S.C. 285, 287, 372 S.E.2d 104, 106 (Ct. App. 1988); 
 see also Murdock, 338 S.C. at 334, 526 S.E.2d at 248.  The inclusion 
 of SCDSS as a party clearly indicated the action concerned only unpaid child 
 support.  Wife could have easily prepared a summons, complaint, and rule to 
 show cause for unpaid alimony and served Husband while he was in the Beaufort 
 County jail.
We also disagree with the contention that the courts grant 
 of ten days to Husband to respond via affidavit or appearance cured this due 
 process violation.  A fundamental requirement of due process is the opportunity 
 to be heard at a meaningful time and in a meaningful manner.  Blanton v. 
 Stathos, 351 S.C. 534, 542, 570 S.E.2d 565, 569 (Ct. App. 2002).  Allowing 
 Wife to proceed with her testimony as to unpaid alimony at the child support 
 hearing deprived Husband the opportunity to participate in discovery, prepare 
 adequate cross-examination, file relevant financial declarations, and call his 
 own witnesses.  We fail to see how an extension of time to respond cured these 
 flaws and made Husbands deficient opportunity to be heard any more meaningful 
 in time or manner.  To quote the family court judge, you cannot let convenience 
 get in the way of due process.  Unfortunately, that is exactly what happened 
 in this case. 
Absent due notice, a court lacks jurisdiction to adjudicate 
 the partys personal rights.  Blanton, 351 S.C. at 542, 570 S.E.2d at 
 569.  A judgment by a court without jurisdiction over both the parties and the 
 subject matter is a nullity and must be so treated by the courts.  Id.  

For the foregoing reasons, the order of the family court 
 is
REVERSED.
HUFF and STILWELL, JJ., and CURETON, A.J., concur.

 
 
 [1] We decide this case without oral argument pursuant to the 
 parties request and Rule 215, SCACR.

 
 
 [2] After her appeal, she chose to dismiss trial and appellate 
 counsel because of issues surrounding the handling of her initial case and 
 general mistrust. 

 
 
 [3] The order stated Husband owed a support arrearage of $19,364 
 for failure to pay as ordered.